OPINION
Appellant is the natural mother of the following children: Qyaira Frary, born on November 15, 1989; Ravonne Lewis, born on November 19, 1992; Rashon Lewis, born on November 19, 1992; and Nicole Lewis, born on November 26, 1993. Michael Frary is the father of Qyaira, while Reginald Lewis is the father of Ravonne, Rashon, and Nicole.
In November 1996, appellant moved to Geauga County from her residence in Cleveland in order to escape an allegedly abusive relationship with Reginald Lewis. Initially, appellant and her children lived with appellant's mother, Johnnie Smith ("Smith"), in a low-income apartment operated by the Geauga County Metropolitan Housing Authority. The regulations governing the complex, however, barred that number of people from living in the same residential unit.
 Appellant contacted DHS for assistance in trying to find suitable housing for herself and her children. Despite the efforts of DHS to help her, appellant was unable to find a residence. As a result, appellant entered into a voluntary agreement with DHS whereby the agency assumed temporary custody of Ravonne, Rashon, and Nicole for thirty days while appellant continued to look for housing.
Following the expiration of the thirty-day period, appellant was still without a suitable place for her family to live. Consequently, on January 9, 1997, DHS filed a complaint in the juvenile court in which it alleged that Qyaira, Ravonne, Rashon, and Nicole were neglected pursuant to R.C. 2151.03 and dependent under R.C. 2151.04(A) and (C). In the prayer for relief, DHS requested either protective supervision or temporary custody of the four children. At the time the complaint was filed, DHS already had temporary custody of the three youngest children pursuant to the voluntary agreement with appellant, but Qyaira was residing with her mother.
Following the filing of the complaint, the juvenile court appointed a guardian ad litem to represent the interests of the children. DHS requested that Michael Frary and Reginald Lewis be served by publication since their whereabouts could not be determined through reasonable diligence and effort. The juvenile court agreed and ordered service by publication.
The matter came on for a preadjudicatory hearing on January 29, 1997. At this proceeding, the juvenile court read the complaint aloud to appellant who indicated that she understood the nature of the neglect and dependency allegations contained therein. The juvenile court also informed appellant of her right to be represented by an attorney during the course of the proceedings, including the right to appointed counsel in case appellant was found to be indigent. Appellant acknowledged her right to counsel, but elected to proceed without representation.[1]
Appellant then entered an admission of "true" to the allegations of neglect and dependency as set forth in the complaint. Pursuant to a prior agreement of the parties, the juvenile court ordered that Qyaira be placed in the temporary custody of Smith, her maternal grandmother. The juvenile court further decreed that Ravonne, Rashon, and Nicole be maintained in the temporary custody of DHS for placement in foster care.
On March 6, 1997, the adjudicatory hearing was held. Although she received notice, appellant did not attend this hearing.[2]
The juvenile court proceeded given appellant's prior admission to the allegations contained in the complaint at the January 29, 1997 hearing. Based on this admission, the juvenile court adjudicated all four children to be neglected pursuant to R.C. 2151.03 and dependent as defined by R.C. 2151.04(A) and (C).
The matter then came on for a dispositional hearing on March 24, 1997. Appellant was present at this proceeding. The parties advised the court that an agreement had been reached regarding an appropriate disposition. After reviewing the proposal, the juvenile court found that it was in the best interest of the children and adopted the disposition.
Pursuant to the agreement, the juvenile court ordered that Qyaira be committed to the temporary custody of Smith subject to an order of protective supervision granted to DHS, while the three other children were committed to the temporary custody of DHS for placement in foster care. As required by R.C. 2151.41.9(A), the juvenile court determined that DHS had made reasonable efforts to prevent the removal of the Frary and Lewis children from the home, to eliminate the continued removal, and to make it possible for the children to return home.
DHS had previously prepared a case plan for the Frary and Lewis children which appellant, the guardian ad litem, and representatives from DHS had all signed. The case plan was filed with the juvenile court on the day of the dispositional hearing.
There were five objectives set forth in the case plan: (1) appellant needed to establish a residence deemed appropriate by DHS; (2) appellant had to maintain her children in their respective educational settings; (3) appellant had to undergo a counseling assessment and thereafter attend individual counseling sessions; (4) appellant had to undergo a drug/alcohol assessment; and (5) appellant had to participate in weekly visitation with her children. The stated goal of the case plan was to reunify appellant with her children. The juvenile court adopted the document with the additional requirement that appellant obtain a driver's license.
On June 13, 1997, DHS filed a motion requesting that the agency be allowed to conduct its semiannual administrative review of the case plan, as provided for in R.C. 2151.416, in the court's presence. The juvenile court granted the motion and scheduled the review for July 3, 1997. Appellant received notice of the hearing, but failed to attend. During the course of the administrative proceeding, the DHS review panel determined that appellant had made very little progress in meeting the objectives set forth in the case plan. Specifically, appellant had not established a residence for her family, had not participated in any counseling sessions, had not undergone the required drug/alcohol assessment, and had visited her children only sporadically.
Thereafter, on October 21, 1997, DHS filed a motion pursuant to R.C. 2151.413 requesting that the juvenile court grant permanent custody of Ravonne, Rashon, and Nicole to the agency. Through a separate motion filed the following day, DHS requested that legal custody of Qyaira be granted to Smith.
The juvenile court initially scheduled a hearing on these motions for January 1998. Upon an oral request by appellant, however, the juvenile court rescheduled the proceeding for February 5, 1998. In addition, the juvenile court appointed the Geauga County Public Defender's Office to represent appellant.
The permanent custody hearing took place as rescheduled. Appellant attended and was represented by an assistant public defender. Various witnesses testified during this proceeding, including the foster parents who were taking care of the Lewis children, a DHS caseworker, a DHS supervisor, and appellant. The juvenile court also received a written report from the guardian adlitem.
On February 11, 1998, the juvenile court issued its judgment in which the court found, by clear and convincing evidence, that it was in the best interest of the children to grant permanent custody of Ravonne, Rashon, and Nicole to DHS. With regard to Qyaira, the juvenile court found that DHS did not establish that it was in her best interest to grant legal custody to Smith. Accordingly, the juvenile court granted the motion for permanent custody of the three youngest children, while denying the motion for legal custody of Qyaira to be given to her maternal grandmother. The juvenile court further decreed that temporary custody of Qyaira be shifted back to DHS with Smith retaining placement of the child pending further order.
From this judgment, appellant filed a timely notice of appeal with this court.[3] She now asserts the following assignment of error:
 "The trial court's finding, that the Geauga County Department of Human Services had proven (as to the natural mother) the requisite elements in a permanent custody hearing pursuant to Ohio Revised Code Section 2151.41.4, by clear and convincing evidence, was against the manifest weight of the evidence."
In her sole assigned error, appellant contends that the juvenile court's decision to award permanent custody of the minor children to DHS was contrary to the weight of the evidence introduced during the custody hearing. To address appellant's claim, it is necessary to review the applicable law governing a motion for permanent custody.
 R.C. 2151.41.4 sets forth the guidelines that a juvenile court must follow. R.C. 2151.41.4(A)(1) mandates that the juvenile court must schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
Following the hearing on the motion, R.C. 2151.41.4(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency and that any of the following apply: (1) the child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (2) the child is abandoned and the parents cannot be located; or (3) the child is orphaned and there are no relatives of the child who are able to take permanent custody.
Therefore, R.C. 2151.41.4(B) establishes a two-pronged analysis that the juvenile court must apply when ruling on a motion for permanent custody. In practice, the juvenile court will usually adjudge whether one of the three circumstances delineated in R.C. 2151.41.4(B)(1) through (3) is presented before proceeding to a determination regarding the best interest of the child.
If the child is not abandoned or orphaned, then the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.41.4(E), the juvenile court must consider all relevant evidence before making this determination. The juvenile court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the conditions enumerated in R.C. 2151.41.4(E)(1) through (12) exist with respect to each of the child's parents.
Assuming the juvenile court ascertains that one of the three circumstances listed in R.C. 2151.41.4(B)(1) through (3) is presented, then the court proceeds to an analysis of the child's best interest. In determining the best interest of the child at a permanent custody hearing, R.C. 2151.41.4(D) mandates that the juvenile court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
The juvenile court may terminate the rights of a natural parent and grant permanent custody of the child to the moving party only if it determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency that filed the motion and that one of the three circumstances delineated in R.C. 2151.41.4(B)(1) through (3) is presented. Clear and convincing evidence is more than a mere preponderance of the evidence. Rather, it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In reAdoption of Holcomb (1985), 18 Ohio St.3d 361, 368; Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence. In reBacorn (Dec. 20, 1996), Portage App. No. 96-P-0015, unreported, at 10, 1996 Ohio App. LEXIS 5801.
We turn now to the case at bar. In its February 11, 1998 judgment entry granting permanent custody of Ravonne, Rashon, and Nicole to DHS, the juvenile court made the two required determinations by clear and convincing evidence. Initially, the juvenile court proceeded under R.C. 2151.41.4(B)(1) by finding that the children were neither abandoned nor orphaned, but that they could not be placed with either parent within a reasonable time or should not be placed with the parents.
In making this finding, the juvenile court was under division (E) of the permanent custody statute. Pursuant to R.C. 2151.41.4(E), the juvenile court was required to enter such a finding if the court determined, by clear and convincing evidence, that one or more of the conditions enumerated in R.C. 2151.41.4(E)(1) through (12) existed as to each of the children's parents.
In the case sub judice, the juvenile court relied on R.C. 2151.41.4(E)(1) and (4) when terminating appellant's parental rights.[4] R.C. 2151.41.4(E)(1) provides as follows:
 "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
R.C. 2151.41.4(E)(4) stipulates that the parent "has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]"
As for the former, the juvenile court found that notwithstanding reasonable case planning and diligent efforts by DHS to assist appellant in remedying the problems that initially caused her children to be placed outside the home, appellant continuously and repeatedly failed to remedy those problems. The record reflects that as early as February 1997, DHS formulated a case plan with the stated purpose of reunifying appellant with her children. The five objectives of the case plan were stated earlier.
At the time of the February 5, 1998 permanent custody hearing, it was undisputed that appellant had not established suitable housing for herself or her children. Henrietta Wilson ("Wilson"), the DHS caseworker assigned to work with appellant, testified that appellant never requested any assistance from the agency in terms of finding or securing housing. Indeed, appellant herself testified at the proceeding that she was living with her mother again. Although appellant claimed to have applied for low-income housing, this was no different from the situation that existed when DHS assumed temporary custody of the children in early 1997. Thus, appellant had done virtually nothing during the year that Ravonne, Rashon, and Nicole were in the temporary custody of DHS to satisfy the first objective.
Since the Frary and Lewis children were in the temporary custody of DHS from early 1997 until the permanent custody hearing in February 1998, the second objective relating to educational settings was not really applicable to appellant. DHS had placed the children in foster care, and it was the foster parents who maintained them in their respective educational settings (e.g., elementary school or Head Start).
As for the third objective, it was uncontroverted that appellant had not undergone the mandatory counseling assessment or thereafter attended any individual counseling sessions. Wilson testified that appellant never requested any assistance from DHS in arranging the assessment, despite the fact that Wilson reminded her on numerous occasions about the importance of receiving counseling. Appellant merely promised to satisfy this objective on her own, but she never did so.
Wilson also indicated that appellant had not achieved the fourth objective by undergoing a drug/alcohol assessment. During her testimony, appellant verified that she had not yet been assessed for a potential drug or alcohol problem.
In fact, the transcript reveals that appellant intentionally resisted satisfying this criterion of the case plan. On direct examination by her own counsel, appellant admitted that "I drink alcohol. I drink beer. * * * I drink beer when I decide I want a beer." When asked about what steps she had taken to undergo the drug/alcohol assessment, appellant stated that she was resistant to such an assessment "because I get a little tired of, if you have a drink, you're a drunk, you know. But I was, I was real resistant about the drug and alcohol thing."
In its judgment entry, the juvenile court observed that no evidence was presented to suggest that appellant actually abused drugs or alcohol. However, the juvenile court also noted that appellant agreed to the drug/alcohol assessment as part of the case plan and that appellant could have easily complied with this objective by simply undergoing the substance abuse evaluation.
The fifth objective required appellant to participate in weekly visitation with Ravonne, Rashon, and Nicole while they were in the temporary custody of DHS. As the caseworker, Wilson had firsthand knowledge regarding appellant's compliance with this requirement. Wilson testified that the case plan originally called for the weekly visits to take place at the DHS office. Appellant, however, did not have reliable transportation. As a result, the agency allowed the contacts to occur either at a local community center or at the home of appellant's mother, thereby providing appellant with easier access to the children. Beyond this, DHS also transported Ravonne, Rashon, and Nicole to the visits.
Wilson indicated that the first visit took place on March 14, 1997. Thereafter, appellant only visited sporadically with her children. Some visitations took place as scheduled, but appellant called Wilson to cancel on a number of other occasions. The last visit occurred on May 16, 1997. Following this, appellant canceled the next scheduled visit. At that time, Wilson told appellant to contact her regarding future visitation, but appellant never did. By the time of the permanent custody hearing on February 5, 1998, appellant had not visited with the children for almost nine months.
Finally, in addition to the objectives set forth in the case plan, the juvenile court imposed an additional requirement during the March 24, 1997 dispositional hearing, to wit: that appellant obtain her driver's license. At the permanent custody proceeding, appellant testified that she had only obtained a temporary permit.
In light of the evidence introduced at the permanent custody hearing, it is manifestly apparent that appellant continuously failed to remedy the conditions causing her children to be placed outside the home. Appellant failed to utilize the social and rehabilitative services that were made available to her by DHS for the purpose of changing her conduct. The juvenile court's judgment as to the existence of the condition set forth in R.C. 2151.41.4(E)(1) is supported by clear and convincing evidence.
Moreover, since the juvenile court's judgment regarding R.C. 2151.41.4(E)(1) was supported by clear and convincing evidence, we need not address whether there was comparable evidence to support the existence of the condition listed in R.C. 2151.41.4(E)(4). See, e.g., In re Jessica V., Justin V., Julie V., Jordan V. (Jan. 22, 1999), Lucas App. No. L-98-1016, unreported, at 14, 1999 Ohio App. LEXIS 95. If we were to examine R.C. 2151.41.4(E)(4) as a basis for the juvenile court's judgment, however, there undoubtedly would be clear and convincing evidence to support the conclusion that appellant failed to visit or communicate with the children when she was able to do so.
In her brief before this court, appellant spends much of her time complaining that DHS did not put forth a "good faith effort" to implement the case plan's stated goal of family reunification. Appellant claims that once DHS had Ravonne, Rashon, and Nicole within its clutches via the temporary custody order, the agency then became intent on gaining permanent custody at any cost. In essence, appellant suggests that DHS simply abandoned the goal of reunification, thereby making permanent custody a foregone conclusion.
Initially, we would observe that appellant is relying on outdated statutory language. An amendment to R.C. 2151.41.4, effective January 1, 1989, eliminated the "good faith" requirement. In re Jessica V., 1999 Ohio App. LEXIS 95, at 15; Inre Brittany and Marcus B. (Jan. 12, 1996), Wood App. No. WD-95-002, unreported, at 10, 1996 Ohio App. LEXIS 31; In reWatkins (Aug. 30, 1995), Summit App. No. 17068, unreported, at 16, 1995 Ohio App. LEXIS 3814. Instead, when a juvenile court relies on R.C. 2151.41.4(E)(1) to terminate parental rights, the appropriate inquiry is whether the agency engaged in "reasonable case planning and diligent efforts" to remedy the problems that initially caused the child or children to be placed outside the home.
In the instant matter, there is a plethora of evidence in the record to support the conclusion that DHS did exercise reasonable case planning and diligent efforts to assist appellant in being reunited with her children. DHS developed a comprehensive case plan and executed those parts of the plan that were incumbent upon it. The agency did everything it could to facilitate the weekly visitations between appellant and the children, including transporting the youngsters to the residence of appellant's mother. Moreover, Wilson urged appellant to begin attending counseling sessions and to undergo the required drug/alcohol assessment. Appellant's failure to satisfy the objectives of the case plan is attributable to her own behavior, not to any lack of planning or effort on the part of DHS.
The juvenile court correctly adjudged that the Frary and Lewis children could not be placed with either parent within a reasonable period of time or should not be placed with the parents. Having done so, the juvenile court proceeded to the second prong of the required analysis, to wit: a determination that it was in the best interest of the children to grant permanent custody to DHS. The juvenile court ultimately concluded that it was their best interest to grant the motion.
Upon review, we determine that there was clear and convincing evidence to support this aspect of the juvenile court's judgment. Without going into detail, it suffices to say that there was evidence adduced to demonstrate that the children would be better served by the grant of permanent custody to DHS for the purpose of adoptive placement. Such evidence included appellant's seeming lack of interest in maintaining an ongoing relationship with her children during the period of temporary custody, the children's need for stability and permanency in their domicile, and the progress made by the children while in the care of their respective foster parents.
Thus, there was clear and convincing evidence underlying both determinations made by the juvenile court under R.C. 2151.41.4. The juvenile court's judgment was not against the manifest weight of the evidence.
Based on the foregoing analysis, appellant's assignment of error is not well-taken. Accordingly, the judgment of the juvenile court is affirmed.
NADER, J., O'NEILL, J., concur.
[1] Appellant does not contest the fact that she was informed of her right to be represented by counsel, but elected to proceed without the benefit of an attorney during this stage of the proceedings.
[2] Again, appellant does not raise any issue in the present appeal to dispute the fact that she was notified regarding the date of the adjudicatory hearing, but failed to attend.
[3] We note that neither Michael Frary nor Reginald Lewis are parties to this appeal. Although the juvenile court's judgment divested them of all parental rights, privileges, and obligations, neither putative father participated in the proceedings below or filed an appeal from the judgment.
[4] Again, we need not consider what circumstance the juvenile court relied upon in terminating the parental rights of Michael Frary and Reginald Lewis since they did not appeal the judgment.